UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

NEW ORLEANS GAS & ELECTRIC
LIGHTS, INC., ET AL

VERSUS

ME'LANGE JOLI, INC. d/b/a
THE COPPERSMITH

CIVIL ACTION

NO. 11-194-JJB-CN

## RULING ON DEFENDANT'S MOTION TO STAY OR, ALTERNATIVELY, TO COMPEL ARBITRATION

This matter is before the Court on Defendant's Motion (doc. 7) to Stay or, Alternatively, to Compel Arbitration. Plaintiffs have filed an opposition (doc. 9). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court DENIES Defendant's motion.

## Background

### I. Facts

This suit arises out of the merger and subsequent fall-out of two gas and light fixture companies, one of which is owned by an individual who is now subject to bankruptcy proceedings.

On March 30, 2010, Defendant Me'lange Joli, Inc. ("Coppersmith")—a company solely owned by William P. Green ("Green")—and Plaintiff New Orleans Gas and Electric Lights, Inc. ("NOGEL")—a company solely owned by Plaintiff Paul Roussel ("Roussel")—entered into a "Confidentiality, Nondisclosure and

1

Assignment Agreement" ("CNAA"). Under the CNAA, NOGEL was to provide Coppersmith with proprietary technological information, and in exchange, Coppersmith was to provide goods and services to NOGEL. The CNAA also provides that any dispute which the parties are unable to resolve in good faith must be resolved in binding arbitration.[1] However, the CNAA also provides that, at any time, either party may seek equitable or injunctive relief in either state or Federal court to protect its intellectual property rights.[2]

On September 8, 2010, the two companies agreed to consolidate and entered into a merger agreement. Under the merger agreement, Green was to transfer fifty percent of his Coppersmith stock to Roussel and Roussel was to transfer fifty percent of his NOGEL stock to Green. Soon thereafter, the parties' relationship went south.

## II. Procedural History

---

[1] The CNAA defines a "dispute" as "any claim, demand, contest, dispute or controversy arising out of, related to or in connection with, directly or indirectly, this Agreement" and "regardless of whether the claim, demand, contest, dispute or controversy involves or sounds in contract, tort, quasi-contract, strict liability, statutory claim or other cause of action" (doc. 3, ex. A, § 11). The CNAA also states that any dispute, should the parties fail to resolve it within twenty days after it has been brought to their mutual attention, "shall be resolved and settled by final, nonappealable and binding arbitration" (*Id.*).

[2] The CNNA states:

> Notwithstanding any term or provision of these dispute resolution provisions, either party shall have the right at any time, whether prior to or during the pendency of the arbitration, to seek any injunctive or other equitable relief in either a state or federal court in the district in which Discloser is domiciled to maintain the status quo or grant such other appropriate interim, preliminary or temporary relief pending, and during the pendency of, the arbitration or to protect the Intellectual Property Rights of either party pending, or during the pendency of, the arbitration.

(doc. 3, ex. A, § 11).

On January 6, 2011, Green filed for Chapter 11 bankruptcy in the United States District Court for the Southern District of Alabama, which entered an automatic stay in accordance with the United States Bankruptcy Code.[3]  During the proceedings, Green claimed to be the sole owner of Coppersmith stock.

On March 25, 2011, Plaintiffs filed suit against Defendant (doc. 1). Plaintiffs allege that Defendant breached the merger agreement by failing to render minimum monthly payments and failing to timely fill customers' orders, and engaged in unfair trade practices and defamed Plaintiffs by contacting the companies' customers and blaming Plaintiffs for the delay.  Plaintiffs also assert Defendant is acting or may act acted improperly with regards to Plaintiffs' proprietary information.

On June 13, 2011, Defendant filed its Motion (doc. 7) to Stay or, Alternatively, to Compel Arbitration.  Defendant asserts that (1) the automatic stay issued in the bankruptcy proceedings should be extended to the Coppersmith stock in the present proceedings; and (2) if this Court denies a stay, that it should compel arbitration.

On June 27, 2011, Plaintiffs filed their opposition (doc. 9).  Plaintiffs assert that (1) the automatic stay should not be extended to this suit because this Court is without authority to do so and because the automatic stay does not extend to

---

[3] The bankruptcy proceedings are pending under case number 11-00051-MAM-11 before the Honorable Margaret A. Mahoney.

corporations wholly owned by a debtor; and (2) the suit is not subject to arbitration.

## Discussion

### I. Stay

Defendant asserts that this Court should extend the automatic stay to any action in this Court regarding the Coppersmith stock because the stock is part of Defendant's Chapter 11 bankruptcy estate. Defendant asserts that any action relating to the stock in this proceeding could have an adverse impact on the bankruptcy proceedings and the estate subject to those proceedings—that is, the Coppersmith stock.

Plaintiffs assert that a motion for an extension of the stay is properly addressed to the bankruptcy court and not this Court. Plaintiff also asserts that the automatic stay does not extend to actions against corporations owned by the debtor. Finally, Plaintiffs assert that Defendant mischaracterizes the issue because Plaintiffs have not specifically sought the Coppersmith stock, but instead simply filed claims against the company.

Under § 362 of the United States Bankruptcy Code ("§ 362"), once an individual has filed for Chapter 11 bankruptcy, the bankruptcy court enters an automatic stay. 11 U.S.C. § 362 (2010). The stay purports to maintain the status quo by preventing the debtor's creditors from instituting separate actions against the debtor or the debtor's property. *Id.* However, a corporation which is wholly owned by a bankruptcy debtor is considered a separate and distinct legal entity,

and, as such, actions against the corporation are not subject to the stay. *Powers v. Texaco, Inc.*, 22 F.3d 1094, 1994 WL 199075, *3 (5th Cir. May 11, 1994). *In re San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 969 (1st Cir. 1993); *In re Winer*, 158 B.R. 736, 743 (N.D. Ill. 1993) (stating that the automatic stay "does not proscribe actions brought against nondebtor entities, even where there is a close nexus between those nondebtors and their bankrupt affiliates" and that "the doctrine applies with equal force even where the nondebtor is a corporation wholly owned by the debtor").

The Court finds that Defendant's motion for stay should be denied. In the bankruptcy proceedings, Green claimed that he owns one-hundred percent of the Coppersmith stock. However, because the law treats the corporation and its debtor-owner as separate and distinct legal entities, § 362's automatic stay simply does not apply to actions against a corporation that is wholly owned by the debtor. *Powers*, 1994 WL 199075.

## II. Arbitration

Defendant asserts that this Court should compel arbitration because the CNAA states that unresolved disputes will be resolved in arbitration. Plaintiffs assert that (1) their claim for equitable and injunctive relief is not governed by the arbitration agreement; and (2) their claims for damages do not arise out of the CNAA, but rather the merger agreement, and therefore, are not subject to the CNAA's arbitration provision.

That parties to a contract may agree, in advance, to settle any and all disputes through arbitration is clearly established. *See* Federal Arbitration Act 9 U.S.C. § 2 (2010). Moreover, the United States Congress and federal courts—in the name of judicial economy, expeditious resolution of claims and enforcement of agreements between parties—strongly favor the settlement of disputes through arbitration and liberally construe arbitration agreements. *Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp*, 460 US 1, 23 (1983). However, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Moran v. Ceiling Fans Direct, Inc.*, 239 Fed. App'x 931, 936 (5th Cir. 2007).

The Court finds that Plaintiffs' claims are not subject to the CNAA's arbitration agreement. The CNAA provides that any dispute "arising out of, related to or in connection with, directly or indirectly *this Agreement* . . . shall be resolved and settled by final, nonappealable and binding arbitration" (doc. 3, ex. A, § 11) (emphasis added). However, the CNAA also expressly permits either party to file for injunctive and equitable relief to protect its intellectual property rights, regardless of whether arbitration has been or will be sought (*Id.*).

Plaintiffs have sought equitable and injunctive relief as well as damages from Defendant's alleged breach of contract, unfair trade practices and defamation. Specifically, Plaintiffs requested that Defendant "be preliminarily and permanently enjoined and restrained from disclosing, revealing, divulging, copying, reproducing, duplicating, replicating and/or otherwise making use of

Plaintiffs' . . . documents or information disclosed by Plaintiffs to Defendant" (doc. 3, ¶ 44). This claim is not subject to the CNAA's arbitration provision since the CNAA permits either party to file for equitable and injunctive relief to protect its intellectual property rights, which this claim plainly does. *See Moran*, 239 Fed. App'x at 936.

In addition, Plaintiffs breach of contract and unfair trade practices claims relate not to the CNAA, but to the merger agreement, which contains no arbitration clause. Plaintiffs assert that Defendant failed to make the minimum monthly payments required by the merger agreement and that Defendant contacted the companies' customers and blamed Plaintiffs' for untimely filled orders. These claims arise out of the companies' agreement to merge and cooperate in order to serve customers. Because the CNAA plainly subjects to arbitration only disputes "arising out of, related to or in connection with, directly or indirectly *this Agreement*"—that is, the CNAA—Plaintiffs need not arbitrate their claims arising out of the merger agreement. *See Moran*, 239 Fed. App'x at 936.

## Conclusion

Accordingly, the Court hereby DENIES Defendant's Motion (doc. 7) to Stay or Alternatively, to Compel Arbitration.

Signed in Baton Rouge, Louisiana this 7th day of July, 2011.

_____
JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

7